The Great American Indemnity Co., Néstor C. Colón y Francisco A. Santini, peticionarios y apelantes, *v.* Hon. José G. Bloise, en su carácter de Comisionado del Interior, Interino, et al., demandados y apelados.

Núm. 8368.—*Sometido:* Marzo 10, 1942. *Resuelto:* Mayo 19, 1942.

*Francis & Belaval,* abogados de los apelantes; *Hon. Procurador General George A. Malcolm* y *Angel C. Calderón,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos alegados en la petición son, en síntesis los siguientes:

En enero 29 de 1941, el Departamento del Interior del Gobierno de Puerto Rico publicó un anuncio de subasta en el que solicitaba proposiciones para la adjudicación en pública subasta de ciertas obras de construcción de un camino. El anuncio, en lo que es pertinente, decía:

"Toda proposición vendrá acompañada de una fianza pagadera al Comisionado del Interior en metálico, cheque certificado, o por compañía de seguro por la suma de ochocientos dólares ($800).

"Cuando la fianza incluída con la proposición sea en forma de fianza por la compañía de seguro, la compañía aseguradora será responsable por el montante total de la fianza expresando claramente esta condición en los documentos de la misma."

En febrero 12, 1941 los peticionarios Colón y Santini radicaron una proposición en pliego cerrado, acompañada de una fianza otorgada por Great American Indemnity Company, por la cual los licitadores y la compañía fiadora se obligan a favor del Comisionado del Interior por la *suma penal* de $800—"in the penal sum of eight hundred ($800) Dollars". La obligación que ofrecieron contraer los otorgantes de dicha fianza, lee así:

"*Ahora, por lo tanto,* la condición de esta obligación es al efecto de que si a dicho principal le fuere adjudicado el mencionado contrato, y dentro de los requeridos (—) días después de haber recibido aviso de tal adjudicación celebrare un contrato y constituyere fianza para el fiel cumplimiento del mismo, entonces esta obligación quedará nula y sin efecto, *de lo contrario, el principal y la fiadora pagarán al beneficiario de esta obligación la diferencia en dinero entre el montante de la proposición del principal y la cantidad por la cual el beneficiario pueda contratar legalmente con otra persona para la ejecución de la obra, si esta última cantidad fuese mayor que la primera;* pero la responsabilidad de la fiadora no excederá en ningún caso de la suma penal aquí fijada." (Itálicas nuestras.)

Alegan los peticionarios que la Junta de Subasta, después de abrir la proposición por ellos sometida la rechazó y se negó a considerarla, alegando que la fianza es insuficiente y no se ajusta a los términos del anuncio publicado; que los peticionarios han hecho todas las gestiones posibles para conseguir que los demandados reconsideren su decisión, pero dichas gestiones han resultado infructuosas; que la proposición de los peticionarios fué la más baja de todas las presentadas a dicha subasta, estuvo hecha a tiempo y fué acompañada de fianza suficiente; que entre las obligaciones impuestas por la ley a los demandados está la de considerar toda proposición que cumpla con los requisitos de los anuncios de subasta publicados por el Departamento del Interior; y que la proposición de los peticionarios fué rechazada injustamente, no obstante la clara obligación legal de los demandados de considerarla. Piden los peticionarios que se dicte

auto de *mandamus,* ordenando a los demandados que procedan a dar por presentada y a considerar la proposición "como recibida en debido tiempo de ley para la adjudicación de dicha subasta a los peticionarios".

En su contestación, los demandados niegan que la proposición de los peticionarios fuera rechazada por el fundamento de insuficiencia de la fianza, alegando en contrario que el verdadero fundamento para la no aceptación de la proposición fué que la fianza no estaba prestada de acuerdo con los términos del anuncio de subasta; niegan que la proposición de los peticionarios fuera la más baja de todas las presentadas a la subasta; y niegan, además, que ellos estén legalmente obligados a considerar una proposición, cuando la fianza que la acompaña no se ajusta a los requisitos del anuncio. Y como defensas especiales los demandados alegaron que el mandamus no procede a menos que vaya dirigido a hacer cumplir un específico y claro deber legal; que no existe un deber ministerial, impuesto por la ley, de ejecutar el acto cuyo cumplimiento se exige; que existiendo poder discrecional en los demandados para ejecutar el acto, no debe librarse el auto que se solicita; y que no apareciendo claro el derecho de los peticionarios, no procede decretar el mandamus.

Declarada sin lugar la petición por sentencia de 27 de marzo de 1941, los peticionarios establecieron el presente recurso, señalando como errores cometidos, a su juicio, por la corte inferior (1) haber resuelto que la fianza requerida por las leyes de Puerto Rico para poder acudir a una subasta de una obra pública, es confiscable en su totalidad por incumplimiento, como si se tratara de un pacto sobre daños liquidados (*liquidated damages*), en vez de una fianza penal (*penal bond*) para responder de los daños realmente sufridos por el Gobierno por incumplimiento, y (2) haber resuelto que la Junta de Subasta tenía facultad o discreción para cambiar los términos o condiciones de una fianza estatutaria..

Es indudable que la fianza prestada por los peticionarios no se ajusta a los términos y condiciones del anuncio de subasta. De acuerdo con éste, la fianza debía ser pagadera al Comisionado del Interior y podía ser constituída en dinero efectivo, en un cheque certificado o en forma de obligación suscrita por una compañía fiadora, debiendo hacerse constar expresamente en el documento que la compañía fiadora se hace responsable por el montante total de la fianza. Los peticionarios en este caso optaron por la fianza corporativa, pero, prescindiendo de los términos y condiciones del anuncio de subasta, ellos y la compañía fiadora se comprometieron a pagar al Comisionado del Interior de Puerto Rico, no la suma de $800, montante total de la fianza exigida, y sí "la diferencia en dinero entre el montante de la proposición del principal y la cantidad por la cual el beneficiario pueda contratar legalmente con otra persona para la ejecución de la obra".

▇▇▇▇ La primera cuestión que debemos considerar y resolver es si la Junta de Subasta y el Comisionado del Interior están legalmente facultados para exigir a los licitadores la prestación de una fianza de acuerdo con las condiciones expuestas en el anuncio de fianza, supra.

El artículo 426 del Código Político (Comp. E. R. pág. 629) autorizó al Comisionado del Interior para formular un pliego de condiciones generales para la contratación de las obras públicas insulares, el cual habría de sustituir al decretado por el Gobierno de España, con fuerza y efecto de ley después de ser publicado en la Gaceta Oficial y copia del mismo sometida a la Asamblea Legislativa de Puerto Rico.

La sección 7 del "Pliego de Condiciones Generales para la Contratación de Obras Públicas Insulares", formulado, publicado y sometido de acuerdo con las disposiciones del citado artículo 426 del Código Político, dispone lo siguiente:

"GARANTÍA QUE DEBERÁ ACOMPAÑAR A LAS PROPOSICIONES.—La garantía que deberá acompañarse a las proposiciones especificadas en

las condiciones particulares para la obra anunciada, será no más del 5 por ciento ni menos del 2 por ciento del valor estimado de la obra. Será presentada en forma de un cheque certificado pagadero al Superintendente de Obras Púbicas, para ser renunciado en favor de El Pueblo de Puerto Rico (to be forfeited to the People of Puerto Rico) si el licitador triunfante no cumple con la condición de celebrar un contrato por escrito con el Superintendente de Obras Públicas para comenzar la obra dentro del plazo señalado en las condiciones generales de la obra adjudicada, cuyo p'azo no excederá en ningún caso de treinta días.''

◾ ¿Cuáles son las diferencias esenciales entre una estipulación para el pago de daños líquidos, ''liquidated damages'', y una para el pago de una penalidad, ''penalty'', en caso de incumplimiento de un contrato?

''§ 240. GENERALMENTE.—El término ''liquidated damages'' significa el montante de los daños que las partes contratantes, al celebrar el contrato, se comprometen y convienen pagar en el caso de incumplimiento. Está bien sentado que las partes en un contrato pueden estipular por anticipado la cantidad que deberá pagarse por las pérdidas o perjuicios que puedan resultar del incumplimiento del contrato. Una estipulación de esta clase es válida y obligatoria, por lo menos en aquellos casos en que los daños resultantes de un incumplimiento del contrato no están fijados por ley o son por su naturaleza inciertos y cuando la cantidad estipulada no excede, manifiestamente del daño que será sufrido. Ordinariamente, una corte de equidad no concederá remedio alguno contra una estipulación para el pago de daños liquidados.'' 15 Am. Jur. 671.

''§ 241. *Distinción entre daños liquidados y penalidades* (penalties). En cuanto se distingue de los daños liquidados, una penalidad es una suma que se fija en un contrato, no como la medida de compensación, sino más bien como un castigo por su quebrantamiento, o *a manera de garantía por los daños realmente sufridos como consecuencia del incumplimiento,* y en ella va envuelta la idea del castigo. Es el pago de una suma convenida por el incumplimiento de un contrato, independientemente del daño sufrido. Su esencia es un pago de dinero convenido como castigo impuesto a la parte que ha faltado, mientras que la esencia de los daños liquidados es una genuina y convenida preestimación de los daños. Se ha dicho que la distinción entre una penalidad y los daños liquidados es que la primera

es una garantía del acto que ha de realizarse, y los segundos deberán ser pagados en el caso de incumplimiento del mismo. Las partes están obligadas por una estipulación de daños liquidados. La cantidad es fija y no está sujeta a cambios. Pero si la estipulación se considera como una penalidad, la parte que no ha cumplido puede ser relevada de su pago. Las cortes investigarán para poder determinar si es injusta o excesiva.'' (Itálicas nuestras). 15 Am. Jur. 672.

Creemos innecesario resolver dentro del presente procedimiento si la fianza exigida por el anuncio de subasta es una de garantía de pago de los daños realmente sufridos (*penal bond*) o si es una fianza para el pago de daños líquidos. Lo que sí resolvemos es que la fianza exigida por el anuncio de subasta en el presente caso se ajusta a los requisitos de la sección 7 del ''Pliego de Condiciones Generales para la Contratación de Obras Públicas Insulares'', supra.

▋ Aceptando, sin resolverlo, que la fianza exigida por la ley y por el anuncio de subasta debe ser de carácter penal, o sea para garantizar el pago de los daños que realmente pueda causar el postor al negarse a celebrar el contrato, debemos ahora considerar y resolver si la fianza ofrecida por los peticionarios cumple con los requisitos legales necesarios para que pueda ser considerada como una fianza de carácter penal.

Los peticionarios dicen en su alegato:

''No tenemos que recordarle a este ilustrado Tribunal la diferencia fundamental que existe en cuanto a *una penalidad que sólo responde de los daños realmente causados* (''actual damages'') y una imposición de daños líquidos que independientemente de los daños causados puede ser confiscada en su totalidad.'' (Itálicas nuestras.)

¿Responde la fianza ofrecida por los peticionarios apelantes de los daños que realmente pudiera causarle al Comisionado del Interior, la negativa del postor a celebrar un contrato, después de habérsele adjudicado la subasta? No. El principal y la fiadora se comprometen a pagar solamente la diferencia que pueda existir entre el montante de la pro-

posición sometida por el peticionario y la cantidad por la cual el Comisionado del Interior pueda contratar legalmente con otra persona para la ejecución de la obra, siempre que esa diferencia no exceda de la suma de $800. Estando limitada la fianza al pago de la indicada diferencia, en caso de que la hubiere, el Comisionado del Interior no tendría derecho a reclamar el pago de cualesquiera otros daños que pudieran serle realmente causados por el incumplimiento de la obligación. Debemos, pues, resolver y resolvemos que la fianza sometida por los peticionarios apelantes no tiene el carácter de un *"penal bond"* y que no cumple con los requisitos de la ley y del anuncio de subasta. Los demandados no estaban ministerialmente obligados a aceptar cualquier clase de fianza que les fuera ofrecida por los peticionarios.

*La sentencia recurrida debe ser confirmada.*