EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan C. Pagán Colón, Ada I. Renga Bonilla; Sociedad Legal de Gananciales Pagán-Renta<br><br>     Peticionarios<br><br>          v.<br><br>Walgreens of San Patricio, Inc.<br><br>     Recurrido | <br><br><br>2014 TSPR 20<br><br>190 DPR \_\_\_\_<br><br> |

Número del Caso: CT-2012-16


Fecha: 14 de febrero de 2014


Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito


Abogados de la Parte Demandante:

        Lcdo. Alfredo Acevedo Cruz
        Lcdo. Jorge Martínez Luciano


Abogados de la Parte Demandada:

        Lcdo. Gregory T. Usera
        Lcda. Nilda Villavicencio


Materia: Derecho Laboral – Improcedencia de la reclamación de cónyuge al amparo de los Arts. 1802 y 1803 del Código Civil de Puerto Rico, cuando estatuto federal por el cual reclamó el empleado no le reconoce tal causa de acción al propio empleado.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan C. Pagán Colón, Ada I.
Renta Bonilla; Sociedad Legal
de Ganaciales Pagán-Renta

    Peticionarios                          CT-2012-16

         v.

Walgreens of San Patricio, Inc.

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 14 de febrero de 2014.

En la presente instancia, el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito (Circuito de Apelaciones) nos certifica la siguiente pregunta:

> Cuando la reclamación de un empleado según el Artículo 1802 no procede porque un estatuto federal, específicamente la FMLA, no lo permite, ¿tiene aun así la esposa de ese empleado una causa de acción por daños emocionales al amparo del Artículo 1802, cuando tal remedio no está disponible para el empleado, según la ley federal?[1] (Traducción nuestra).

---

[1] "When an employee's Article 1802 claim is barred because there is a specific federal statutory employment claim, here the FMLA, does the spouse of the employee nevertheless has a cause of action from emotional distress damages under Article 1802 when such relief is not available to the employee under

Siendo consistentes con lo que han sido nuestros precedentes, contestamos tal interrogante en la negativa.

## I

Los hechos de este caso están perfectamente redactados en la Opinión que el Circuito de Apelaciones emitiera, Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1 (1st Cir. 2012). Por otro lado, las circunstancias procesales esbozadas en la Opinión del Primer Circuito, y que son pertinentes a la pregunta que se nos certifica, se exponen a continuación.

El Sr. José Pagán Colón y su esposa, la Sra. Ada Renta Bonilla, presentaron una demanda contra Walgreens of San Patricio, Inc. (Walgreens), en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico (Corte de Distrito) después de que el señor Pagán Colón fue despedido de su empleo. En su demanda, el matrimonio presentó varias causas de acción, incluyendo represalias al amparo de la Family and Medical Leave Act, 29 U.S.C. sec. 2601-054 (FMLA); despido injustificado, según la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. secs. 185a-185m, y daños y perjuicios para la señora Renta Bonilla, al amparo de los Arts. 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141-5142.

---

*federal law?"* En realidad, la solicitud hecha por el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito incluía, además, las siguientes dos preguntas: *"Does the answer to this question vary depending upon the nature of the underlying federal employment claim? If so, what are the factors to be considered?"* No obstante, este Tribunal determinó que estas dos últimas preguntas no son certificables por ser especulativas.

En cuanto a estas causas de acción, la Corte de Distrito desestimó mediante sentencia sumaria parcial las causas de acción de los Arts. 1802 y 1803 del Código Civil de Puerto Rico, *supra*, y los demandantes voluntariamente desistieron de la causa de acción según la Ley Núm. 80.

Celebrado el juicio en su fondo y sometida la prueba, un jurado falló a favor del señor Pagán Colón y le concedió $100,000 en daños. No obstante, la Corte de Distrito, *sua sponte*, redujo por *remittitur* la cantidad otorgada por el jurado a $47,145.00, para igualar la cantidad con los daños mitigados. La Corte de Distrito también denegó la solicitud del demandante de daños líquidos que concede la Sección 2617 (A)(II)(iii) de la FMLA, *supra*.

Apelado el caso por ambas partes, el Circuito de Apelaciones confirmó la sentencia de la Corte de Distrito en todas sus partes, excepto que se reservó su determinación con relación a si procedía o no la acción de daños y perjuicios por daños emocionales según el Art. 1802 del Código Civil de Puerto Rico, *supra*, que reclama la cónyuge del demandante, la señora Renta Bonilla.

Así, y como adelantáramos, el Circuito de Apelaciones nos solicitó que le certificáramos, en síntesis, si en nuestra jurisdicción es posible que proceda una causa de acción de un familiar por los daños emocionales que provee el Art. 1802 del Código Civil de

Puerto Rico, *supra*, cuando al demandante principal no le es posible recibir ese tipo de daños por el estatuto laboral que provee su causa de acción.

Luego de analizar detenidamente los argumentos de ambas partes, estamos listos para fundamentar nuestra contestación en la negativa a esa pregunta.

## II

### A. Family and Medical Leave Act

La Family and Medical Leave Act (FMLA) es una legislación del Congreso de los Estados Unidos aprobada en el 1993. Esta ley federal le garantiza a todo empleado elegible el que se pueda ausentar de su empleo -sin paga- por un periodo de 12 semanas en el término de 1 año, ante una enfermedad grave (*"serious illness"*) que no le permita ejercer sus funciones, o para el cuido de un familiar cercano que se encuentre enfermo, o por el nacimiento -o adopción- y cuido de un nuevo miembro de la família.[2] Así, la FMLA le garantiza al empleado la retención de su posición en el empleo o una posición equivalente, durante ese periodo de 12 semanas.[3]

La FMLA también establece que durante este periodo de 12 semanas el patrono deberá proveerle al empleado el seguro médico que disfrutaba al momento que se acogió a

---

[2] 29 U.S.C.A. sec. 2612(a)(1).

[3] 29 U.S.C.A. sec. 2614(a)(1).

los beneficios de esta ley.[4] Además, si la condición médica lo requiere, la ausencia por el término de 12 semanas puede llevarse a cabo de manera intermitente o a tiempo parcial,[5] y el empleado puede, si así lo desea, acordar con su patrono agotar sus días de vacaciones o enfermedad, recibiendo de esta manera su salario durante las 12 semanas que dure su ausencia.

En lo que concierne más directamente al asunto planteado, la FMLA prohíbe que un patrono interfiera, restrinja o niegue el ejercicio de los derechos que esta provee al empleado,[6] y dispone para el resarcimiento de los daños sufridos por el empleado, incluyendo los remedios en equidad que sean necesarios si el patrono viola tales derechos.[7] Ahora bien, en torno específicamente a los daños que pudieran ser resarcidos al demandante, la Sección 2617 de la ley establece lo siguiente:

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
>
> **(A)** for damages equal to--
>
> **(i)** the amount of--
>
> **(I)** any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

---

[4] 29 U.S.C.A. sec. 2614(c)(1).

[5] 29 U.S.C.A. sec. 2612(a)(1).

[6] 29 U.S.C.A. sec. 2615(a)(1).

[7] 29 U.S.C.A. sec. 2617(a)(1).

**(II)** in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

**(ii)**...

**(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii),** except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively;...[8]

Como claramente surge del texto de esta sección, además de los daños monetarios, el inciso (iii) establece que el empleado pudiera ser compensado por los "daños líquidos" (*liquidated damages*) que haya probado.[9] Así, la propia sección establece que de proceder estos "daños líquidos", los mismos son fijos y se limitan a la duplicación de los daños monetarios probados que provee el inciso (i) más los intereses que provee el inciso (ii).

Es importante resaltar que con relación a los daños que provee la Sección 2617 de la FMLA, el Tribunal

---

[8] 29 U.S.C.A. sec. 2617(a).

[9] La sección establece una presunción a favor de la otorgación de estos daños líquidos, que puede ser rebatida si el patrono demuestra que sus actuaciones no fueron intencionales.

Supremo de los Estados Unidos ha señalado que "la causa de acción provista por la FMLA es una limitada: Los daños que se pueden recobrar son estrictamente definidos y restringidos a las pérdidas monetarias reales". (Traducción nuestra). *("[T]he cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses.")*[10] De manera que, como bien determinó en este caso la Corte de Distrito y lo confirmó el Circuito de Apelaciones, ciertamente la FMLA no provee para que el exempleado y demandante principal que reclama una causa de acción al amparo de ese estatuto federal, pueda ser compensado por daños y angustias emocionales (*emotional distress damages*).

## B. García Pagán v. Shiley Caribbean y casos relacionados

Aunque a menudo se cita -con propiedad- a <u>Santini Rivera v. Serv. Air, Inc.</u>, 137 D.P.R. 1 (1994), para dilucidar lo referente al derecho de un familiar a reclamar daños emocionales por una causa de acción contingente a una ley laboral, lo cierto es que el caso que sirvió de base para la decisión del caso de *Santini*

---

[10] <u>Nv. Dept. of Human Res. v. Hibbs</u>, 538 U.S. 721, 739-740 (2003). Véanse, además: <u>Brumbalought v. Camelot Care Ctrs.</u>, 427 F.3d 996, 1007 (6to Cir. 2005); <u>Farrell v. Tri-County Metropolitan Transp. Dist. of Oregon</u>, 530 F.3d 1023, 1025 (9no Cir. 2008); <u>Rodgers v. City of Des Moines</u>, 435 F.3d 904, 908-09 (8vo Cir. 2006); <u>Walker v. United Parcel Serv., Inc.</u>, 240 F.3d 1268 (10mo Cir. 2001).

*Rivera* fue <u>García Pagán v. Shiley Caribbean, etc.,</u> 122 D.P.R. 193 (1988).[11]

Fue en <u>García Pagán v. Shiley Caribbean, etc.,</u> *supra*, en el que, en una causa de acción de discrimen por razón de sexo y en el contexto de la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. secs. 13-19, por voz del hoy Juez Presidente señor Hernández Denton, determinamos por primera vez que los daños para el obrero que ha sido discriminado y que establece la Ley Núm. 100 de 30 de junio de 1959[12] (Ley anti discrimen), incluye los daños emocionales que este pueda probar que ha sufrido.[13]

Partiendo de la base de que un obrero que probaba una causa de acción según la Ley Núm. 100 podía incluir daños emocionales como parte de las causas que le proveía esa ley laboral, resolvimos entonces en <u>Santini Rivera v.</u>

---

[11] En este aspecto, resultan pertinentes las expresiones de la distinguida Jueza Asociada Miriam Naveira Merly en <u>Santini Rivera v. Serv. Air, Inc.,</u> 137 D.P.R. 1 (1994), quien fuera el único voto disidente en ese caso. En la nota al calce número 20 de su Opinión Disidente en *Santini Rivera*, la Jueza Naveira Merly señaló lo siguiente:

> Aunque en *García Pagán v. Shiley Caribbean, etc.* supra, págs. 207-208, se expresó que la causa de acción que dispone la Ley Núm. 100, *supra*, es de igual amplitud que la acción civil de daños y perjuicios provista por la Ley de Derechos Civiles, este señalamiento se hizo a los únicos fines de establecer que el término "daños'' en la Ley Núm. 100, *supra*, incluye la compensación por sufrimientos y angustias mentales al empleado o aspirante a empleo. Íd., pág. 215. **Por lo tanto, consideramos impropio utilizar la opinión de *García Pagán v. Shiley Caribbean, etc.*, supra, para prejuzgar la controversia ante nos hoy**. (Énfasis nuestro).

[12] 29 L.P.R.A. secs. 146-151.

[13] En este caso, la distinguida Jueza Asociada Miriam Naveira Merly, quien -como señaláramos en la nota al calce número 11- más tarde fue el único voto disidente en <u>Santini Rivera v. Serv. Air, Inc.,</u> *supra*, se unió a la mayoría del Tribunal. Véase, además, <u>Berríos Heredia v. González</u>, 151 D.P.R. 327 (2000).

Serv. Air, Inc., *supra*, que, aunque ciertamente la Ley Núm. 100 no hacía mención de los familiares, por lo que estos no tenían una causa de acción por daños emocionales fundamentados en esa ley, eso no implicaba que no la tuvieran según el Art. 1802 del Código Civil de Puerto Rico.[14]

Luego, en Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998), un caso en el que le reconocimos al empleado codemandante (Dorante) una causa de acción por represalias basada en la Sección 24 de la Ley Núm. 96 de 26 de junio de 1956[15] (Ley 96), revocamos al Tribunal de Primera Instancia que había desestimado la causa de acción fundamentada en el Art. 1802 de la esposa del codemandante Dorante.[16] Así, determinamos, en primer lugar, que fundamentado en la Sección 24 de la extinta Ley 96, el codemandante Dorante tenía la oportunidad de reclamar daños por los sufrimientos y las angustias mentales al amparo de dicha ley.[17] En segundo lugar, determinamos que fundamentado en lo resuelto en Santini Rivera v. Serv. Air, Inc., *supra*, la esposa codemandante también tenía derecho a probar una causa de acción por sufrimientos y angustias mentales, no bajo la ley

---

[14] Santini Rivera v. Serv. Air, Inc., *supra*, págs. 5-6.

[15] 29 L.P.R.A. sec. 245w.

[16] Dorante v. Wrangler of P.R., 145 D.P.R. 408, 412 (1998).

[17] Íd., pág. 432.

laboral, pero sí según el Art. 1802 del Código Civil de Puerto Rico, *supra*.[18]

## C. Porto y Siurano v. Bentley P.R., Inc.

Por otro lado, es menester resaltar lo resuelto por esta Curia en Porto y Siurano v. Bentley P.R., Inc.,[19] particularmente por su *ratio decidendi*. En *Porto y Siurano*, fundamentándonos, a su vez, en lo resuelto en Rivera v. Security Nat. Life Ins. Co.,[20] señalamos lo siguiente con relación a la Ley Núm. 80:[21]

> En esta jurisdicción la norma general, en relación con la materia en controversia, es a los efectos de que un obrero o trabajador contratado por tiempo indeterminado que es despedido sin justa causa **solamente tiene derecho al remedio exclusivo que provee la Ley Núm. 80 de 30 de mayo de 1976.** (Énfasis suplido)

Como vemos, el fundamento o *ratio decidendi* de esta decisión es que del texto de la Ley Núm. 80 no surge ningún otro remedio que el que claramente dispone la Sección 185a de la ley. Así lo destacó el hoy Juez Presidente señor Hernández Denton, en su Opinión de Conformidad en Santini Rivera v. Serv. Air, Inc., *supra*, pág. 16. En su Opinión, el Juez Presidente señor Hernández Denton expuso el *ratio decidendi* de *Porto*

---

[18] Íd., pág. 434.

[19] 132 D.P.R. 331(1986).

[20] 106 D.P.R. 517 (1977).

[21] 29 L.P.R.A. sec. 185a *et seq.*

*Siurano* al señalar que "como regla general ante una conducta de un patrono, prevista y sancionada por una legislación especial de índole laboral, el empleado **sólo tendrá derecho al remedio que dicha ley disponga**, sin poder acudir al Art. 1802 del Código Civil". (Énfasis suplido).

**Concluimos, entonces, que al interpretar una ley especial de tipo laboral u obrero patronal en el contexto del remedio solicitado, este Tribunal ha sido consistente en interpretar de manera restrictiva el estatuto. Esto es, nos hemos negado a aceptar la tesis de que el legislador dejó abierta la puerta a la utilización de algún otro remedio o causa de acción, provista por alguna ley general.**[22]

## III

Como esbozamos, en esta jurisdicción nunca hemos reconocido una causa por sufrimientos y angustias mentales fundamentada en el Art. 1802 del Código Civil de Puerto Rico, *supra*, a un familiar, sin primero determinar que el codemandante principal, *id est*, el exempleado agraviado, sí puede recibir ese tipo de daños mediante el estatuto laboral que lo cobija. Por eso, tal vez resulte necesario contextualizar lo planteado en Santini Rivera v. Serv. Air, Inc., *supra,* con relación al Art. 1802 de

---

[22] Claro está, a no ser que ese otro remedio encuentre su fundamento primario en un derecho de estirpe constitucional. Véase Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35 (1986).

nuestro Código Civil. Y es que, todo el acervo civilista que cobija a ese célebre artículo, y que en *Santini Rivera* citando a Hernández v. Fournier[23] nos sedujo a describir el acto culposo o negligente como uno "infinitamente abarcador", se expresó en el contexto de un reconocimiento previo de que el obrero *per se* gozaba de un remedio en daños emocionales que le proveía la ley especial laboral que lo cobijaba, conforme lo habíamos resuelto en García Pagán v. Shiley Caribbean, etc., *supra*.

Por otro lado, y como surge claramente del texto del estatuto federal en cuestión, de prevalecer en su causa de acción el obrero agraviado tendría derecho a recibir, como compensación en daños adicionales, una cantidad en *liquidated damages* que, como señalamos, la propia Sección 2617 limita o define como la duplicación de los daños monetarios probados que provee el inciso (i) más los intereses que provee el inciso (ii) de esa sección. Esta cantidad adicional de *liquidated damages* solo prevalecerá si la Corte de Distrito entiende que el patrono no obró de buena fe al incumplir con la ley.

En The Great American Indemnity Co. v. Bloise,[24] definimos *liquidated damages* como "el montante de los daños que las partes contratantes, al celebrar el

---

[23] 80 D.P.R. 93, 96 (1957).

[24] 60 D.P.R. 423, 428-429 (1942).

contrato, se comprometen y convienen pagar en el caso de incumplimiento".[25] Ahora bien, al interpretar un concepto no desconocido en nuestra jurisdicción, pero que se halla en un estatuto federal del cual no existe un equivalente local, debemos, en buena hermenéutica jurídica, "recurrir a los principios ilustrativos [del concepto] que se puedan hallar en la jurisprudencia federal interpretativa [del] estatuto".[26] Al así hacerlo, encontramos que a nivel apelativo la mayoría de los distintos circuitos han coincidido en que los daños líquidos que otorga la Sección 2617 (A)(II)(iii) son del tipo compensatorios y no punitivos, y que no es posible otorgar daños emocionales al amparo de esa sección.[27] Además, y como ya señalamos, el Tribunal Supremo federal ha sido claro al establecer que los daños recobrables al amparo de esta Ley son estrictamente definidos y restringidos a las pérdidas monetarias reales del empleado.[28]

De manera que, aunque la concesión de los daños líquidos que establece la Sección 2617 (A)(II)(iii) depende de una acción intencional en violación a la ley

---

[25] Véase, además, Black's Law Dictionary, 9na ed., St. Paul, Ed. West Publishing Co., 2009, pág. 447.

[26] S.L.G. v. S.L.G., 150 D.P.R. 171, 183 (2000).

[27] Farrell v. Tri-County Metropolitan Transp. Dist. of Oregon, supra, pág. 1025; Liu v. Amway Corp., 347 F.3d 1125, 1133 n. 6 (9no Cir. 2003); Brumbalough v. Camelot Care Ctrs., supra; Rodgers v. City of Des Moines, supra; Walker v. United Parcel Serv., supra; Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11mo Cir. 1999); Nero v. Indus. Molding Corp., 167 F.3d 921, 930 (5to Cir. 1999); Cianci v. Pettibone Corp., 152 F.3d 723, 728-29 (7mo Cir. 1998).

[28] Nv. Dept. of Human Res. v. Hibbs, supra, págs. 739-740.

por parte del patrono, estos no se consideran un castigo sino un recobro en compensación de los daños reales (monetarios) del empleado.  En vista de lo anterior, no vemos espacio para definir los daños líquidos que otorga la FMLA de manera distinta a lo que se ha hecho en la esfera federal, máxime cuando tal definición no conflige necesariamente con nuestra concepción local del mismo concepto.

Por otro lado, es pertinente resaltar el hecho de que la FMLA es claramente una ley antirepresalias.[29]  En ese contexto, aunque en Puerto Rico no contamos con un equivalente local a la FMLA, las disposiciones que van dirigidas a prohibir y penalizar la represalia en esa ley deben ser analizadas a la luz de nuestra ley local de represalias, Ley Núm. 115 de 20 de diciembre de 1991,[30] por ser estatutos que aunque no son necesariamente equivalentes, sí son análogos en el propósito que persiguen. Siendo así, nótese que, distinto a la FMLA, la Ley Núm. 115 que rige en nuestra jurisdicción local sí provee expresamente para que el empleado que ha sufrido el agravio pueda recuperar daños por angustias mentales.[31]

Por lo tanto si, contrario a la realidad, el Congreso de los Estados Unidos hubiera dispuesto para que

---

[29] Mercer v. Arc of Prince Georges County, Inc., 2013 WL 3470489; Lorentz v. Alcon Laboratories, Inc., 2013 WL 3368987; Lanier v. University of Texas Southwestern Medical Center, 2013 WL 2631316.

[30] 29 L.P.R.A. sec. 194 et seq.

[31] Véase Art. 2 de la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194a.

la FMLA proveyera ese tipo de daños para el empleado agraviado, y considerando lo resuelto en nuestra jurisdicción en Dorante v. Wrangler of P.R., *supra*, con toda probabilidad el Circuito de Apelaciones no nos hubiera certificado la interrogante en cuestión y, de haberlo hecho, nuestra contestación hubiera tenido que ser en la afirmativa. Sin embargo, ese no es el caso. Por eso, acceder a lo solicitado por la parte demandante-peticionaria sería, por un lado, permitir al amparo de un estatuto federal una causa de acción que nunca hemos permitido en circunstancias similares al amparo de un estatuto laboral local o, en la alternativa, interpretar, contrario a lo resuelto por los tribunales hermanos en la jurisdicción federal -incluyendo el Tribunal Supremo Federal- que la FMLA sí concede daños emocionales al codemandante principal, ampliando por *fiat* judicial el alcance de una ley federal. Ninguna de las dos alternativas son plausibles en esta instancia.

Por último, y con relación a la posición esbozada en las opiniones disidentes, es menester señalar lo siguiente. El Art. 1802 del Código Civil de Puerto Rico, *supra*, constituye la fuente legal mediante la cual una parte puede reclamar daños emocionales que surjan de toda causa de acción extracontractual. Ahora bien, en instancias en que la causa de acción surja de una relación contractual o de otro tipo, el Art. 1802 del Código Civil de Puerto Rico, *supra*, constituye una

fuente legal general para reclamar daños emocionales, siempre y cuando no se haya pactado algún tipo de limitación en ese sentido o que alguna ley especial -como lo es una ley laboral- no lo consienta o lo limite.

Es por esto que en cierto sentido resulta contradictoria la posición de las opiniones disidentes pues, en síntesis, ambas reclaman que la esposa del codemandante principal puede reclamar los daños que concede el Art. 1802 del Código Civil de Puerto Rico, *supra*, por una causa de acción que surge de una ley especial que no concede tales daños, sino que los descarta. La contradicción estriba en que no se puede utilizar un estatuto federal, en este caso la FMLA, **como base** para una causa de acción en daños emocionales alegadamente sufridos por la esposa y obviar que tal estatuto no solo no los reconoce para ella, sino que los prohíbe para él. O, dicho de otro modo, ¿qué **causa de acción** tendría la esposa del empleado si el despido de este último no es violatorio de la FMLA? Ninguna, no importa lo real y angustioso que sabemos podría resultar el despido de un familiar, en especial el de un cónyuge.

La causa de acción en daños del cónyuge, conforme lo establecimos en Maldonado v. Banco Central Corp., 138 D.P.R. 268 (1995), es contingente; *id est*, depende de que la causa de su cónyuge prevalezca. Pero no es contingente solo en el aspecto probatorio, sino que, una vez no se prueba **la causa**, desaparece aquello que

hubiera permitido recobrar daños mediante el Art. 1802 del Código Civil de Puerto Rico, *supra*. Cuanto más cuando tal causa ni siquiera se reconoce en la ley especial mediante la cual se pretende reclamar.

Como en el caso de cualquier demandante que reclama daños, estos tienen que surgir de una causa de acción y tal causa de acción, a su vez, no se da en un vacío. Surge, como expresamos, de una relación extracontractual (torticera) -lo que obviamente no son las circunstancias en el caso de autos-, de una relación contractual o por una ley especial que la provea. En este caso, esa ley especial es la FMLA, la que no provee para **ninguno** de los demandantes una causa de acción por daños emocionales. Y es que, ausente una violación de una política pública reconocida en una ley especial, como por ejemplo la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a-185m, un empleado despedido no tiene recurso judicial alguno contra su expatrono. Vélez Rodríguez v. Pueblo Int'l, Inc., 135 D.P.R. 500, 505-515 (1994). Ausente esa protección legal, un despido no es más que una resolución de un contrato bilateral.

Por otro lado, es menester reseñar que en Santini Rivera v. Serv Air, Inc., *supra*, en el que reconocimos una causa de acción en daños y perjuicios por el Art. 1802 del Código Civil de Puerto Rico, *supra*, para los familiares como "una normativa independiente", el enfoque de la controversia era claramente distinguible

a la del caso de autos. En *Santini*, en vista de que la Ley Núm. 100, **le reconocía al obrero** una causa de acción en daños por angustias mentales, la controversia giró en torno a por qué no se le podía reconocer a sus familiares la misma causa de acción. Fue entonces que señalamos que, aunque por ser la Ley Núm. 100 una ley exclusivamente de índole laboral no hacía referencia a los familiares del obrero, los familiares sí tenían una causa de acción por el Art. 1802 del Código Civil de Puerto Rico, *supra*, que, en ese sentido, era **similar a la del obrero**.

Sin embargo, distinto a *Santini*, el enfoque de la controversia en el caso de autos no es por qué no reconocerle a los familiares lo que la ley le concede al obrero -aunque no haga mención directa de estos- sino, todo lo contrario, por qué reconocerle a un cónyuge –o a cualquier familiar- una causa de acción que la ley bajo la cual se reclama el daño, y de cuyo resultado depende, no le permite al obrero directamente afectado.

Claro, persiste el argumento de que la FMLA no prohíbe expresamente una causa de acción para el resarcimiento de daños emocionales para los familiares. Sin embargo, de aceptar tal razonamiento tendríamos que, además de desviarnos de lo que ha sido la línea de interpretación de este asunto en la jurisdicción federal y en las jurisdicciones estatales, concluir que el Congreso de los Estados Unidos permitió con su "silencio" concederle más beneficios al cónyuge que los

que le concedió al propio obrero afectado. Esto, en primer lugar, porque es concebible que en circunstancias como las del caso de autos los beneficios derivados de los daños emocionales sufridos por un cónyuge serían superiores a los daños líquidos que concede la FMLA al obrero directamente afectado. En segundo lugar, en nuestra jurisdicción siempre habría la posibilidad de que el obrero terminara no beneficiándose -ni siquiera indirectamente- de los beneficios en daños emocionales que reciba su cónyuge, porque sabemos que tales beneficios serían privativos del cónyuge del obrero, sin que este último pudiera reclamar nada.[32] En fin, el resultado sería que la cónyuge tendría derecho a beneficiarse de los daños líquidos recibidos por el obrero, pero el obrero no tendría ese mismo derecho sobre los daños que ella recibiría.

**IV**

En armonía con todo lo anterior, contestamos la pregunta certificada por el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito de la siguiente manera: **Cuando la reclamación de un empleado en virtud del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, no procede porque un estatuto federal, específicamente la FMLA, no lo permite, la esposa de ese empleado tampoco cuenta con una causa de**

---

[32] <u>Maldonado v. Banco Central Corp.</u>, 138 D.P.R. 268 (1995); <u>Robles Ortolaza v. U.P.R.</u>, 96 D.P.R. 583 (1968).

**acción por daños emocionales al amparo del mencionado Art. 1802.**

Se dictará certificación a tales efectos.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan C. Pagán Colón, Ada I.
Renta Bonilla; Sociedad Legal
de Gananciales Pagán-Renta

    Peticionarios                CT-2012-16

        v.

Walgreens of San Patricio, Inc.

    Recurrido


SENTENCIA

San Juan, Puerto Rico, a 14 de febrero de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, contestamos la pregunta certificada por el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito de la siguiente manera: **Cuando la reclamación de un empleado en virtud del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, no procede porque un estatuto federal, específicamente la FMLA, no lo permite, la esposa de ese empleado tampoco cuenta con una causa de acción por daños emocionales al amparo del mencionado Art. 1802.**

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta emitió Opinión Disidente a la cual se une el Juez Presidente señor Hernández Denton. El Juez Asociado señor Estrella Martínez emitió Opinión Disidente a la cual se une la Juez Asociada señora Rodríguez Rodríguez.


                Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Juan C. Pagán Colón, Ada I.
Renta Bonilla; Sociedad Legal
de Ganaciales Pagán-Renta
       Peticionarios


        v.              CT-2012-16


Walgreens of San Patricio,
Inc.
       Recurrido


Opinión disidente emitida por la Jueza Asociada señora Fiol Matta a la cual se une el Juez Presidente señor Hernández Denton


En San Juan, Puerto Rico, a 14 de febrero de 2014.

Disiento enérgicamente de la Opinión del Tribunal en el presente caso. La controversia de derecho presentada ante nuestra consideración exige que determinemos si la esposa de un empleado despedido en contravención a un estatuto laboral aprobado por el congreso federal puede reclamar al expatrono de su cónyuge la compensación de sus propias angustias mentales; ello cuando el estatuto federal no concede al empleado el derecho a reclamar por daños, pero tampoco ocupa el campo ni descarta el derecho que pudieran tener los familiares. Una mayoría de este Tribunal concluye que la reclamación de la

esposa no se puede considerar bajo el Artículo 1802 del Código Civil de Puerto Rico porque la legislación laboral no contempla esa posibilidad para el empleado. Con tal proceder, se deroga, por *fiat* judicial, la causa de acción independiente del cónyuge de un empleado concedida por nuestro Código Civil, trasplantando a la normativa general sobre responsabilidad civil la normativa laboral, adoptada por legislación especial, a pesar de que el estatuto laboral especial no excluye la causa de acción que nos ocupa. Claramente, ese proceder es una prerrogativa de la rama legislativa y la legislatura no ha aprobado ningún estatuto en ese sentido. Por eso, me parece impropio resolver que una causa de acción por daños que incluya angustias mentales, presentada al amparo de nuestro Código Civil por el cónyuge de un empleado despedido, dependa totalmente de que la legislación laboral reconozca que el empleado tiene una causa de acción similar.

I.

Aun cuando los hechos no están en controversia y están expuestos en los dictámenes del foro federal, resulta útil hacer un recuento de los mismos y de los fundamentos legales expresados en las etapas previas a esta certificación para poner en contexto la controversia jurídica que debemos resolver.

El señor Juan C. Pagán Colón (señor Pagán) comenzó a trabajar en Walgreens de San Patricio, Inc., (Walgreens)

en septiembre de 2000. Al momento de su despido en el 2008, ocupaba la posición de Asistente de Gerente en la tienda de Juana Díaz. El 10 de mayo de 2008, el señor Pagán se reportó a trabajar en el horario de 4:00 de la mañana a 2:00 de la tarde. Durante las primeras horas de su turno, sintió dolores de pecho, palpitaciones en el corazón y sudoración frecuente.[33] Por esa razón, a la hora de tomar el receso, alrededor de las 9:00 de la mañana, acudió a la sala de emergencias del Hospital Damas en Ponce sin informarlo en el trabajo. En la sala de emergencias, el señor Pagán fue atendido por altos niveles de azúcar en la sangre y alta presión arterial; se le recomendó permanecer bajo observación y someterse a otras evaluaciones.

Mientras era atendido, el señor Pagán llamó a su esposa, la señora Ada I. Renta Bonilla (señora Renta), quien llegó a la sala de emergencias. El señor Pagán le pidió a su esposa que llamara al señor Edwin Figueroa, Gerente de Walgreens en Juana Díaz (señor Figueroa), para que le informara que lo estaban atendiendo en la sala de emergencias y que no sabía si regresaría a trabajar. En una primera llamada, la señora Renta habló con el señor Figueroa. Durante ese día, la señora Renta llamó dos veces más al trabajo de su esposo para informar su estado de

_____

[33] El señor Pagán padece de Diabetes Tipo II, condición que el patrono conoce desde que fue contratado.

salud, además de la eventual admisión al hospital de éste.[34]

El 16 de mayo de 2008, el señor Pagán fue sometido a un estudio de cateterismo cardiaco bajo anestesia general y fue dado de alta del hospital el 17 de mayo de 2008. Durante su estadía en el hospital, el señor Pagán habló con una compañera de trabajo y con el señor Giovanni Rivera, Asistente de Gerente quien tuvo conocimiento de que el señor Pagán iba a ser sometido al cateterismo.

El día que le dieron de alta, el señor Pagán fue a la farmacia Walgreens de Juana Díaz para comprar un medicamento. Allí le informó a Mariel Colón, Asistente de Gerente, que el médico le había ordenado una semana de descanso. En ese momento, la señora Colón era la empleada gerencial con mayor rango presente en la tienda. Además, el señor Pagán le entregó a la secretaria señora Wanda Santiago, el certificado médico que justificaba las ausencias durante su hospitalización.

No obstante, el 19 de mayo de 2008, el señor Figueroa redactó una carta dirigida al señor Pagán en la que le

---

[34] Entre las partes existe controversia en cuanto a una de esas dos llamadas. La señora Renta alegó, que en una de sus llamadas habló con el señor Giovanni Rivera, Asistente de Gerente, y le informó sobre las atenciones médicas que estaba recibiendo su esposo. El señor Rivera negó haber recibido esa llamada. En la segunda llamada, la señora Renta habló con el señor Carlos Figueroa, empleado del departamento de fotografías, a quien le dijo que su esposo había sido hospitalizado y le informó el número de cuarto. El señor Figueroa alegó que nunca recibió esas llamadas ni la información que la señora Renta proveyó.

daba un periodo de 48 horas para que informara sobre su paradero en los días que estuvo ausente y para informarle su derecho a una licencia por incapacidad, además de apercibirle sobre las consecuencias negativas en su empleo de no cumplir con lo solicitado.[35] El 23 de mayo de 2008, el señor Pagán llegó a Walgreens para entregar un certificado médico preparado por una endocrinóloga que justifica las ausencias para descanso en los días posteriores a su hospitalización. En ese momento el señor Pagán informó que estaba disponible para regresar a trabajar el próximo día y solicitó que le asignaran un turno. La señora Ivelisse López, recibió el certificado médico y ofreció comunicarse más tarde con él para poder consultar con el señor Figueroa el itinerario de trabajo que se le asignaría.

Ese día, el señor Figueroa recibió el certificado médico y consultó con la señora Ada Colón, Gerente de Distrito, el estatus de empleo del señor Pagán. Luego de esa llamada, el señor Figueroa decidió despedir al señor Pagán. Por eso, la señora López llamó al señor Pagán para informarle que se reportara el próximo día a las 8:00 de la mañana para reunirse con el señor Figueroa. Ese 24 de mayo de 2008, el señor Figueroa despidió al señor Pagán

---

[35] Dicha carta se envió el 23 de mayo de 2008 y no fue hasta el 28 de mayo de 2008 que el señor Pagán la recibió. De acuerdo a las determinaciones de hechos del tribunal de distrito federal, para el 19 de mayo de 2008 cuatro empleados gerenciales conocía la hospitalización del señor Pagán.

sin ofrecerle las razones de la decisión, solo instruyéndole que llamara a las oficinas centrales de Walgreens si tenía alguna pregunta.

Luego de intentar infructuosamente de comunicarse con las oficinas centrales, el señor Pagán y su esposa acudieron personalmente al lugar. Allí, le entregaron a Miriam Díaz, Directora de Recursos Humanos, los dos certificados médicos que excusaban al señor Pagán desde el 10 al 23 de mayo de 2013. La señora Díaz se reunió con el señor Figueroa y le recomendó que permitiera al señor Pagán explicar sus ausencias. Así lo hizo el señor Figueroa, pero concluyó que las explicaciones que ofreció el señor Pagán en cuanto a las personas a quiénes había notificado sobre su hospitalización eran inconsistentes. Determinó entonces que el señor Pagán estaba mintiendo y confirmó su despido.

El señor Pagán solicitó los beneficios de desempleo en el Departamento del Trabajo (DT). Originalmente, Walgreens notificó que el despido respondió a que el señor Pagán había abandonado su trabajo. Después de la reunión entre el señor Pagán y el señor Figueroa, Walgreens informó al DT que la razón del despido estuvo basada en la conducta deshonesta del empleado en cuanto a las razones de su ausencia y por unas violaciones anteriores al reglamento de personal. Sin embargo, el DT concedió el beneficio de desempleo al señor Pagán luego de concluir

que su despido no fue el resultado de una conducta impropia. Walgreens no apeló de dicha determinación.

El señor Pagán, la señora Renta y la sociedad legal de gananciales compuesta por ambos instaron una demanda en contra de Walgreens en el Tribunal Federal para el Distrito de Puerto Rico por represalias bajo el Family and Medical Leave Act (FMLA), por daños al amparo de los Artículos 1802 y 1803 del Código Civil de Puerto Rico y por despido injustificado conforme la Ley Núm. 80 del 30 de mayo de 1976.[36] En cuanto a la causa de acción de la esposa, al amparo de los Artículos 1802 y 1803, específicamente alegaron que ella sufrió y continuará sufriendo daños emocionales y económicos como resultado de la conducta exhibida por Walgreens en contra del señor Pagán. Estimaron los daños en $200,000.00.[37]

Atendidas unas solicitudes de sentencia sumaria, el tribunal de distrito desestimó específicamente las causas de acción de la señora Renta. El foro federal concluyó que la señora Renta no tiene derecho a una compensación por daños porque el señor Pagán no tiene derecho a ello bajo

---

[36] En cuanto al señor Pagán, se reclaman en la demanda $1,000,000.00 por las violaciones al estatuto federal y $1,000,000.00 por los daños sufridos en la causa de acción al amparo de los Artículos 1802 y 1803 del Código Civil.

[37] Se alega en la demanda que: "As direct and proximate cause of Walgreens aforementioned conduct against his husband, Plaintiff Renta Bonilla has suffered and will continued [sic] to suffer emotional and financial damages estimated at two hundred thousand dollars ($200,000.00) under this cause of action".

la FMLA. Este estatuto provee un remedio exclusivo que no incluye la compensación de los daños emocionales del empleado. Según el foro federal, la esposa no tiene una causa de acción en contra de Walgreens porque las acciones de esa empresa que dieron base a su demanda no son distintas a las que se alegaron como para sustentar la reclamación del esposo.[38]

Celebrado el juicio, el jurado emitió un veredicto a favor del señor Pagán en cuanto a la causa de acción al amparo del FMLA. Como éste había desistido de la causa de acción de la Ley Núm. 80, el tribunal desestimó la de daños.

El señor Pagán y la señora Renta recurrieron al Tribunal Federal para el Primer Circuito para apelar, entre otras cosas, de la denegación de la causa de acción

---

[38] El Tribunal Federal para el Distrito de Puerto Rico desestimó la causa de acción de la señora Renta en cuanto a los daños emocionales; nada dispuso en cuanto a los daños económicos, aun cuando en la demanda la esposa también alegó haber sufrido daños económicos. El Tribunal Federal para el Primer Circuito, en una nota al calce, concluyó que la señora Renta no alegó daños económicos distintos a los que el señor Pagán reclamó. La nota al calce número nueve de la orden emitida por el Tribunal de Circuito el 4 de septiembre de 2012 lee: "The Complaint states that Renta 'suffered and will continue to suffer emotional and financial damages.' However, the plaintiffs failed to plead any facts showing a financial harm to Renta independent of that to her husband. The district court treated Renta's Article 1802 claim as one seeking compensation for only emotional distress, and we will follow its lead."

por los daños emocionales de la esposa.[39] El foro apelativo federal concluyó que un reclamante bajo el estatuto FMLA no tiene derecho a una compensación por daños emocionales.[40] No obstante, reconoció que este Tribunal Supremo ha resuelto que un familiar de un empleado agraviado por discrimen en el empleo tiene, en ciertas circunstancias, una causa de acción en daños al amparo del Art. 1802.[41]

De esa forma, el Tribunal Federal para el Primer Circuito se planteó que existe una controversia sobre el derecho de un familiar a reclamar daños emocionales al amparo del Art. 1802 de nuestro Código Civil cuando el estatuto federal por el cual reclama el empleado no provee un remedio en daños y decidió reservar su fallo en cuanto a la causa de acción en daños de la señora Renta y someter ante este Tribunal la presente certificación.

---

[39] Los señores Pagán-Renta apelaron también el que no se les hubiera concedido unos daños líquidos que provee el FMLA cuando se establece que la conducta exhibida por el patrono, en violación al FMLA, fue exhibida con intención. El Tribunal de Circuito se negó a conceder los daños líquidos. Entendió que aun cuando Walgreens violentó el derecho del señor Pagán a una licencia sin sueldo conforme dispone el FMLA, su conducta no fue intencional. Consideró, en vez, que se trató de una conducta novata o de "rookie" del señor Figueroa aun cuando éste solicitó asesoría legal y consultó con los empleados gerenciales de mayor rango.

[40] Nv. Dept. of Human Res. V. Hibbs, 538 U.S. 721 (2003) ("The cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses.")

[41] Cita a Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994).

II.

La Asamblea Legislativa de Puerto Rico se ha ocupado de regular con bastante detalle la relación obrero-patronal. Las numerosas leyes especiales laborales en nuestro ordenamiento jurídico componen un esquema comprehensivo e integrado que **sustituye** la normativa del Código Civil a favor de un régimen estatutario especial. En particular, se trata de una serie de acuerdos para preservar la paz laboral y la protección de las trabajadoras y los trabajadores, de forma que no se tenga que recurrir al Código Civil como fuente legal primaria, pues, por consideraciones de política pública, **la Asamblea Legislativa** entendió que hacía falta un diseño legislativo distinto que protegiera adecuadamente ciertos intereses fundamentales.[42]

---

[42] Así por ejemplo, nuestra Asamblea Legislativa tomó la decisión de política pública de sustituir el término prescriptivo de 15 años aplicable a las acciones personales o contractuales, por términos más cortos (3 años en la Ley Núm. 80, 29 L.P.R.A. sec. 185*l*). Igualmente, en vez de mantener el peso de la prueba en el demandante, como correspondería en una acción bajo el Código Civil, se diseña un esquema probatorio favorable al empleado (Ley Núm. 80, 29 L.P.R.A. sec. 185*k*). También, en vez de la concesión de daños y perjuicios al amparo del Código Civil, se limitan las cuantías indemnizables, de forma que se garantice un acceso directo de los empleados a sustento económico, mientras se limita la responsabilidad civil de los patronos. Ejemplo de esto es la mesada establecida por la Ley Núm. 80, lo que constituye, como regla general, el remedio exclusivo del empleado. (29 L.P.R.A. sec. 185*a*). Incluso, en determinados casos, aplica una inmunidad patronal. (Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1930, según enmendada, 11 L.P.R.A. secs. 20 - 21).

No hay duda que, **por acción legislativa**, las disposiciones del Código Civil fueron sustituidas como derecho primario para regular la relación obrero-patronal. Por eso en esos casos, en vez de recurrir al Código Civil, se recurre principalmente a la legislación especial. Claro está, ello no quita que cuando la legislación especial no aplique, regresemos al Código Civil como fuente supletoria.[43] ¿Qué pasa, entonces, cuando la Asamblea Legislativa **no ha sustituido** el derecho establecido en el Código Civil, como sucede cuando son los familiares del empleado quienes sufren los daños? Recordemos que, en el contexto obrero-patronal, la Asamblea Legislativa desplazó el derecho civil a favor de una legislación especial

---

[43] Así lo reconoce la Opinión mayoritaria al referirse a otras circunstancias en las que la mesada no es el remedio exclusivo en una acción por despido injustificado, como cuando hay violaciones a un derecho constitucional o cuando otra ley especial lo provee. Claro está, sabemos que esas no son las únicas excepciones a esta regla general, pues si el patrono ocasiona un daño independiente al acto del despido, como sería incurrir en alguna agresión, podría ser demandado bajo el Artículo 1802 de nuestro Código Civil. Porto y Suriano v. Bentley P.R., Inc., 132 D.P.R. 331 (1992). Cabe destacar que esta norma aplica en los EEUU cuando el patrono incurre en un "tort" independiente al despido, como sería el "intentional infliction of emotional distress". Por otra parte, si no hubiera legislación protectora del empleo, vendríamos obligados a recurrir a la teoría general de las obligaciones y los contratos o a la figura del contrato de arrendamiento de servicios. López Fantauzzi v. 100% Natural, 181 D.P.R. 92, 107 (2011). En ese caso resolvimos claramente que cuando la Ley Núm. 80 -legislación especial- no aplica, corresponde ir a las fuentes de derecho supletorio en Puerto Rico.

referente a la relación entre el patrono y un empleado. Fue una decisión de política pública que la legislatura **no** ha tomado en cuanto a los familiares del obrero. Mientras esto no ocurra, tenemos que recurrir al Código Civil para resolver los planteamientos de estas personas.

En *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1 (1994), notamos que la legislación especial aplicable al discrimen en el empleo -la Ley Núm. 100, 29 L.P.R.A. sec. 146 *et seq*.- "carece de referencias a los parientes de los obreros protegidos".[44] Igual ocurre en muchas leyes laborales, sean puertorriqueñas, como la Ley Núm. 80 de Despido Injustificado, o federales, entre estas la FMLA. Con respecto a la Ley Núm. 100, en *Santini Rivera* explicamos que "[l]a ausencia de esa referencia en la Ley Núm. 100, sobre los parientes de los trabajadores se explica precisamente por la naturaleza y propósitos de esa ley. Esta legislación en cuestión es **exclusivamente** de índole **laboral**. Su objeto es la relación obrero-patronal. Está dirigida a tratar únicamente los derechos de los empleados y ofrecer particular protección a sus intereses. No tiene, pues nada que ver, con terceros u otras personas que no sean empleados".[45]

En cuanto la fuente de derecho aplicable cuando se analiza una causa de acción en daños presentada por un

---

[44] Santini Rivera v. Serv. Air, Inc., supra, a la pág. 5.

[45] (Énfasis suprimido y suplido) Id.

pariente contra el patrono, dijimos en ese caso: "Precisamente porque tal es su ámbito y esencia, no tiene sentido alguno intentar la dilucidación de la situación jurídica de los parientes de los obreros, en el contexto de la citada Ley Núm. 100. Como no les aplica, no puede ser fuente de derechos para los parientes".[46] Continuamos explicando que "[l]os derechos de los parientes de los obreros no son apéndice del contrato laboral ni emanan supletoriamente o de modo alguno de la referida legislación especial, por lo que no procede acudir a ella para decidir si los parientes de los obreros tienen derechos o no".[47] Es decir, para determinar el derecho de un pariente a ser indemnizado por los daños causados, no se recurrirá a la ley laboral especial, sino al Código Civil; claro está, a menos que la Asamblea Legislativa disponga otra cosa, **lo cual no ha ocurrido**.[48] En *Santini Rivera* resolvimos que "[l]os derechos de los parientes… constituyen una normativa independiente que surge por su propia cuenta al amparo del [Artículo] 1802 del Código Civil, *supra*, **conforme a los principios generales de la responsabilidad extracontractual**. Es a esos principios y a ese artículo, a los cuales hay que acudir como fuentes de

---

[46] Id.
[47] Id.

[48] Por ejemplo, la Asamblea Legislativa podría incluir a los familiares en la propia ley especial laboral o aprobar un esquema remedial independiente para ellos.

derecho, cuando se dilucida la situación jurídica del pariente del obrero".[49] Evidentemente, la causa de acción de los parientes nace de un acto culposo o negligente del patrono que da base a una reclamación bajo el artículo 1802, independientemente de que esa actuación del patrono también de pie a la causa de acción del empleado y esté regulada por un ordenamiento laboral. El orden laboral no desplaza a las otras acciones.

De lo anterior podemos afirmar que, si bien la Asamblea Legislativa ha limitado el uso del Código Civil por los trabajadores cuando hay un conflicto con sus patronos, ello no ha ocurrido en cuanto a sus familiares. La causa de acción en daños del cónyuge de un empleado contra el patrono es **independiente** a la causa de acción del empleado. Y, hasta que otra cosa disponga la Asamblea Legislativa, estamos obligados a reconocer una causa de acción bajo el Artículo 1802. Lo contrario sería realizar un acto legislativo, pues, hasta ahora, la Asamblea Legislativa y el Congreso han limitado su desplazamiento del derecho supletorio a las controversias entre empleados y patronos. No lo han hecho en cuanto a los familiares. Si se quiere ampliar esa limitación para incluir al cónyuge y otros familiares, le corresponde a la Asamblea Legislativa hacerlo, sustituyendo el Artículo 1802 por algún otro esquema regulador para esos casos. De igual forma, le

[49] (Énfasis suplido) Rivera Santini, supra, a las págs. 5-6.

corresponde al Congreso de los EEUU actuar, si quiere limitar el derecho de los familiares de un empleado a ser indemnizados por las angustias mentales producidas por un patrono.

Por tanto, es un error caracterizar la causa de acción de un familiar de un empleado -en este caso, un cónyuge- como meramente condicionada o supletoria a la de dicho empleado. En *Maldonado v. Banco Central Corp.*, 138 D.P.R. 268 (1995) examinamos la relación entre la causa de acción del empleado y la de su familiar. En ese caso, expresamos que la causa de acción del familiar guardaba relación de "contingencia" en cuanto a la acción del empleado, pero dicha "contingencia" de ninguna manera niega que las dos causas de acción sean separadas e independientes **como cuestión de derecho**. La "contingencia" a la que hicimos referencia en *Maldonado* se refiere a la necesidad de probar el acto culposo del patrono que, simultáneamente, requieren la Ley Núm. 100 y el Artículo 1802. Ese punto lo dejamos meridianamente claro al expresar que "[e]sta acción es contingente ya que si el empleado no prevalece, su consorte no puede reclamar por un discrimen **no probado**".[50] Nótese que la contingencia en este contexto es una **cuestión de hecho**, no una condición o limitación.

---

[50] (Énfasis suprimido y suplido) Maldonado*,* supra, a la pág. 276.

La causa de acción del pariente no está sujeta a que la causa de acción del empleado prospere, sino a que el acto dañino sea probado. Por tanto, la causa de acción del empleado no da base a la del pariente, sino que tienen en común un hecho que da base tanto a una acción regulada por el ordenamiento laboral y a otra provista por el ordenamiento general. Es decir, que si se prueba que el patrono no discriminó, la causa de acción bajo el Artículo 1802 no puede prevalecer, pues no hay acto culposo o negligente. Evidentemente, la relación de contingencia se limita a requerir que el empleado pruebe el discrimen. Una vez demostrado el discrimen como acto culposo, la consecuencia, es decir, el daño que este cause es **individual**, de manera que tanto el empleado como su familiar tienen que demostrar, separadamente, sus respectivos daños.[51] En cuanto a la posibilidad de que el empleado pueda ser indemnizado por sus angustias, hay que ver si la ley laboral especial lo permite; en el caso de los familiares, ante la ausencia de ley especial aplicable, hay que determinar si el Código Civil avala su causa de acción.

Nuevamente, limitar la causa de acción del familiar corresponde a la Asamblea Legislativa. En ciertas circunstancias, la legislatura ha limitado las cuantías a pagarse a los trabajadores, desplazando al Código Civil.

---

[51] Véase, SLG Serrano v. FootLocker, 182 D.P.R. 824 (2011).

Es forzoso concluir que lo mismo tendría que ocurrir si se va a excluir del alcance del Artículo 1802 a los familiares del empleado. Al fin y al cabo, el Artículo 1802 es una disposición estatutaria de aplicación general. Para desplazarla, hace falta una legislación especial. Ya existen leyes especiales que cobijan la relación obrero-patronal. No hay legislación especial análoga para los familiares; para ellos hay una legislación general: el Artículo 1802 del Código Civil.

En el contexto de la controversia ante nuestra consideración, el Congreso federal aprobó la FMLA, con su particular esquema remedial, como parte de su reglamentación de las relaciones obrero-patronales. Ni mencionó a los familiares ni desplazó la legislación estatal. Por tanto, estamos ante un caso en el que el empleado no puede **reclamar** angustias mentales, aunque, en efecto, **las haya sufrido**. Pero el Congreso no hizo lo mismo con los familiares. Tampoco lo ha hecho la Asamblea Legislativa de Puerto Rico. No nos corresponde tomar esa decisión de claro corte legislativo. Lo que sí, nos corresponde es aplicar la normativa vigente. Hasta tanto el Congreso federal o la Asamblea Legislativa de Puerto Rico sustituyan la ley general del Artículo 1802 del Código Civil, es nuestro deber aplicarlo.

III.

La Opinión mayoritaria altera, de manera significativa, el alcance de nuestro ordenamiento jurídico sobre daños sin que la Asamblea Legislativa haya actuado sobre ello. Contrario a la conclusión a la que llega una mayoría de este Tribunal, contestaría en la afirmativa la pregunta certificada por el Tribunal Federal para el Primer Circuito. Por tanto, proveería que la señora Renta **sí** tiene una causa de acción en daños, independiente a la de su esposo, al amparo del Artículo 1802 de nuestro Código Civil aun cuando el señor Pagán no tiene derecho a ello bajo el estatuto laboral federal por el cual reclamó contra su patrono. En Puerto Rico, el ordenamiento jurídico sobre daños generales está regulado por el Artículo 1802 de Código Civil y el mismo reconoce que el perjuicio material y moral que causa **un acto culposo o negligente puede refluir sobre varias personas**. Por tanto, cada perjudicado adquiere una acción independiente contra el causante del daño, pues la fuente de la responsabilidad es precisamente el perjuicio particular y personal sufrido por cada uno de ellos.[52]

En fin, bajo nuestra fuente de derecho general de daños la señora Renta tiene derecho a instar una acción en contra de Walgreens para reclamar los daños que sufriera por el despido de su esposo, el señor Pagán. En su día, la señora Renta tendrá que establecer, conforme la normativa

---

[52] Hernández v. Fournier, 80 D.P.R. 93 (1957).

jurídica del Artículo 1802 de nuestro Código Civil, que el despido de su cónyuge fue un acto culposo o negligente, que sufrió unos daños y que los mismos fueron a causa de ese despido. No siendo este el resultado de la deliberación de este Tribunal, disiento.


                              Liana Fiol Matta
                              Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan C. Pagán Colón, Ada I.
Renta Bonilla; Sociedad Legal
de Gananciales Pagán-Renta

      Peticionarios

          v.                        CT-2012-16

Walgreens of San Patricio, Inc.

      Recurridos


OPINIÓN disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ


San Juan, Puerto Rico, a 14 de febrero de 2014.

La mayoría de este Tribunal interpreta que es improcedente la reclamación del cónyuge de un empleado por daños y perjuicios al amparo de los Arts. 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141 y 5142, cuando el estatuto federal por el cual el empleado reclamó su derecho no le reconoce a éste último tal causa de acción. Por entender que los remedios concedidos al amparo de una legislación laboral sólo afectan el reclamo entre el empleado y el patrono y que la acción del cónyuge del empleado, en estos casos, constituye una reclamación independiente, DISIENTO.

I

Los hechos medulares son sencillos. El Sr. Juan Pagán Colón fue despedido de su trabajo como asistente de gerente en la tienda Walgreens de Juana Díaz. Ello, ocurrió luego de que el señor Pagán Colón se ausentara por un periodo de dos semanas debido a una condición médica que requirió su hospitalización durante una semana y otra adicional de recuperación. Como consecuencia, el señor Pagán Colón y su esposa, la Sra. Ada Renta Bonilla, instaron una reclamación en la Corte de Distrito Federal contra el patrono. En ésta alegaron que el señor Pagán Colón fue despedido en violación al Family Medical Leave Act (FMLA), 29 U.S.C. secs. 2601-2654, despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a, *et seq.*, y que el despido del señor Pagán Colón causó a su esposa angustias mentales que son compensables bajo los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142.

Los esposos Pagán Renta desistieron de su reclamación de mesada al amparo de la Ley Núm. 80, *supra*. De otra parte, la Corte de Distrito desestimó las causas de acción al amparo de los Arts. 1802 y 1803 del Código Civil y denegó la reclamación de daños líquidos al amparo de la FMLA. No obstante, un jurado falló a favor del señor Pagán Colón por su reclamación a base de la FMLA.

Las partes acudieron al Circuito de Apelaciones. En lo pertinente, los esposos Pagán Renta alegaron que no procedía desestimar sumariamente la reclamación de la señora Renta al amparo del Código Civil. Walgreens se opuso y argumentó que la FMLA no reconoce daños y angustias mentales, por lo que la señora Renta no puede ser acreedora de mayores derechos que el señor Pagán. Además, arguyó que ésta no sostuvo una acción torticera independiente que justifique tal remedio.

El Circuito de Apelaciones confirmó la sentencia en su totalidad; sin embargo no adjudicó la reclamación de la señora Renta Bonilla. Así, ese foro cuestionó si un familiar de un empleado perjudicado puede recobrar angustias mentales a través de una reclamación derivativa basada en el Art. 1802 del Código Civil cuando el estatuto federal que cobija al empleado perjudicado no le permite recobrar angustias mentales.[53]

II

La FMLA fue aprobada en el 1993 con el fin de crear un balance entre las demandas del área de trabajo con las necesidades familiares, promover la estabilidad, seguridad económica e integridad familiar. De esta forma, se

---

[53] La pregunta certificada fue: When an employee's Article 1802 claim is barred because there is a specific federal statutory employment claim, here the FMLA, does the spouse of the employee nevertheless have a cause of action for emotional distress damages under Article 1802 when such relief is not available to the employee under federal law?

reconoce a los empleados elegibles el derecho a ausentarse por razones médicas, el nacimiento o adopción de un niño o niña, o para proveer el cuidado a un hijo o hija, esposo o esposa, o padres en una condición seria de salud. 29 U.S.C.A. sec. 2601 (b).

Con ese objetivo, la FMLA reconoció al empleado elegible la libertad de ausentarse por un periodo de tiempo que no excediera de 12 semanas -sin sueldo- en el término de un año por las razones protegidas por el estatuto, y el derecho a regresar a su trabajo o equivalente luego de esa ausencia. 29 U.S.C.A. sec. 2612 y 2614.

La FMLA define quién está cobijado por la referida legislación. A estos efectos, dispone que la ley aplica al empleado elegible. Éste es aquel que ha trabajado durante un tiempo no menor de 12 meses y al menos 1,250 horas para el periodo anterior al que solicita ausentarse. Véase, 29 U.S.C.A. sec. 2611. Además, reconoce al empleado elegible al que se le violen sus derechos al amparo de la FMLA el remedio a ser compensado por los daños monetarios o líquidos que haya probado. 29 U.S.C.A. sec. 2617. Sobre este particular, el Tribunal Supremo Federal señaló que la causa de acción al amparo de la FMLA es limitada a las pérdidas monetarias reales. Nv. Dept. of Human Resources

v. Hibbs, 538 U.S. 721, 739-740 (2003).[54] En ninguna disposición de la FMLA se expresa que los remedios concedidos en ella aplican a los parientes de los empleados protegidos. Más aún, la FMLA no desplaza la legislación estatal que provea mayores beneficios.

### III

Ante este hecho, y en ausencia de legislación especial en Puerto Rico que aplique a la cónyuge en cuanto a este particular, debemos acudir a la ley general. En este sentido el Art. 12 del Código Civil, 31 L.P.R.A. sec. 12, dispone que "[e]n las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones de este título". Es por ello que una ley de carácter especial prevalece sobre el estatuto de carácter general. S.L.G. Vázquez, Ibáñez v. De Jesús, Vélez, 180 D.P.R. 287, 398 (2010); Mun. de San Juan v. Prof. Research, 171 D.P.R. 219, 236 (2007). No obstante, en ausencia de una disposición legal o cuando una situación jurídica no está confrontada específicamente en la ley especial, se acude a fuentes supletorias, como lo es el

---

[54] En un principio, existía debate en cuanto a si las angustias mentales estaban incluidas en los remedios concedidos por la FMLA. Específicamente, se argumentó que al aprobar la FMLA proveía un remedio paralelo al del Fair Labor Standards Act (FSLA), y que debería ser interpretada similarmente. Por ello, se argüía que la FMLA podía incluir la compensación por este tipo de daño. Sin embargo, contrario a la FSLA el lenguaje de la FMLA no concede explícitamente éstos. Véase, K.N. Honohan, Remedying the liability limitation under the Family and Medical Leave Act, 79 B.U.L. Rev. 1043 (1999).

Código Civil. Véanse, Robles Menéndez v. Tribunal Superior, 85 D.P.R. 665 (1962); Freeman v. Noguera, Secretario de Hacienda, 82 D.P.R. 307 (1961).

Nuestro Código Civil regula la responsabilidad por actos u omisiones que causan daños. En lo pertinente, el Art. 1802 dispone que: "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 L.P.R.A. sec. 5141. Por su parte, el Art. 1803 del Código Civil dispone sobre la responsabilidad por daños causados por aquellas personas de quienes uno debe responder. 31 L.P.R.A. sec. 5142.

Este Tribunal no ha vacilado en expresar que la responsabilidad impuesta por el Código Civil responde a uno de los principios más fundamentales de nuestro ordenamiento jurídico, es decir, la responsabilidad aquiliana por hechos propios. Así, todo perjuicio material o moral, da lugar a la reparación de daños si se establece la realidad del daño sufrido, existe un nexo causal entre éste y la acción u omisión de otra persona y esa actuación u omisión es culposa o negligente. Hernández v. Fournier, 80 D.P.R. 93, 96 (1957). **Más aún, hemos resaltado que ese precepto no admite limitación ni excepción de clase alguna. El causante de un daño debido a su culpa o negligencia está obligado a repararlo.** Íd, págs. 96-97. Ello, responde al perjuicio particular y personal sufrido

por cada uno de los demandantes. Por tanto, la causa de acción al amparo del Art. 1802, *supra* surge, no solo por las acciones culposas, sino igualmente por las omisiones cuando existe un deber jurídico de actuar. Ahora bien, como las acciones *ex delicto* responden a los postulados sobre la sana convivencia humana de no causar daño a los demás, éstas no necesitan para su reclamo que "le preceda una relación jurídica entre las partes". <u>Maderas Tratadas v. Sun Allinace, *et.al.*</u>, 185 D.P.R. 880, 908 (2012). De igual forma, hemos reconocido que en nuestro ordenamiento jurídico procede una reclamación de daños extracontractuales como resultado del quebrantamiento de un contrato, si el hecho causante del daño constituye una violación del deber general de no causar daño a otro, y a su vez, incumplimiento contractual. Véase, <u>Ramos v. Oriental Rattan Furnt., Inc.</u>, 130 D.P.R. 712, 727 (1992).

Dentro de los daños a reparar se encuentran los daños especiales que responden a los daños físicos, patrimoniales, pecuniarios o económicos. Éstos permiten la valoración económica porque impacta el patrimonio del perjudicado. Como consecuencia, también hemos reconocido los daños morales que son los infligidos a las creencias, sentimientos, la dignidad, la estima social o la salud física o psíquica del que lo reclama. <u>Rivera v. S.L.G. Díaz</u>, 165 D.P.R. 408, 428-249, 437-438 (2005). Los daños morales indemnizan el dolor, los sufrimientos físicos y

las angustias mentales que padece una persona como consecuencia de un acto culposo o negligente. Para ser resarcido por estos daños morales es imprescindible probar sufrimientos y angustias morales profundas  y no basta una pena pasajera. Hernández v. Fournier, *supra*, pág. 103.

A pesar de ello, la mayoría de este Tribunal se aparta de esta norma jurídica para sostener que como la ley especial no le reconoce el resarcimiento por estos daños al empleado, tampoco su cónyuge tiene derecho a reclamarlos. Para arribar a esa conclusión, sostienen que al interpretar una ley laboral especial, en el contexto del remedio solicitado, este Tribunal entiende restrictivamente el estatuto, por lo que sólo hemos reconocido el remedio o causa de acción reconocida en la ley especial. Ante ello, la mayoría de este Tribunal razona erradamente que si la legislación laboral que cobija la relación entre el empleado y el patrono no concede indemnización por angustias mentales, su cónyuge tampoco tendrá derecho a ese resarcimiento en virtud del Código Civil. De esta forma, incorporan una limitación a una ley que aplica a una relación laboral, coartando de esta manera el posible resarcimiento que por derecho propio tiene un ajeno a la relación jurídica.

IV

Un examen de la jurisprudencia relevante demuestra que este Tribunal ha determinado que procede una causa de

acción independiente al amparo del Art. 1802 del Código Civil a favor del pariente del empleado que reclama a base de una legislación laboral especial.

En específico, este Tribunal permitió una causa de acción independiente bajo el Art. 1802 del Código Civil a los parientes de un empleado que renunció a su patrono por actos constitutivos de hostigamiento y discrimen por razón de género. En <u>Santini Rivera v. Serv Air, Inc.</u>, 137 D.P.R. 1 (1994) dispusimos que el reclamo de los parientes relacionado a una legislación laboral especial, constituyen una normativa **independiente** que surge por su propia cuenta al amparo del Art. 1802 del Código Civil, conforme a los principios de la responsabilidad extracontractual. Más aún, enfatizamos que **"es a esos principios y a ese artículo [1802], a los cuales hay que acudir como fuentes de derecho, cuando se dilucida la situación jurídica del pariente del obrero"**. Íd, pág. 6.

En <u>Santini Rivera v. Serv Air, Inc.</u>, *supra*, la reclamación fue al amparo de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146, *et seq.* Los padres del empleado y la novia de éste instaron una reclamación bajo el Código Civil por el trato discriminatorio que sufrió su pariente en el empleo. Se solicitó la desestimación de ésta. Al analizar si procedía desestimar la causa de acción instada por los parientes, recalcamos que la Ley Núm. 100 carece de referencia a los parientes

de los obreros protegidos y es una legislación exclusivamente de índole laboral, por lo que su objeto estricto es la relación obrero-patronal. Por tanto, está dirigida a tratar únicamente los derechos de los empleados y ofrecer particular protección a sus intereses.

Ante ello, expresamos que **"no tiene sentido alguno intentar dilucidar la situación jurídica de los parientes de los obreros, en el contexto de la citada Ley Núm. 100"**. Santini Rivera v. Serv Air, Inc., *supra*, pág. 5. Ello, pues, al no aplicarles, no puede ser fuente de derecho para los parientes. Íd. Incluso, señalamos que **"los derechos de los parientes de los obreros no son un apéndice del contrato laboral ni emanan supletoriamente o de modo alguno de la referida legislación especial, por lo que no procede acudir a ella para decidir si los parientes de los obreros tienen determinados derechos o no"**. Íd. Enfatizamos que las leyes especiales laborales brindan particular protección a los intereses de los trabajadores, éstas **"no pueden ser, de modo alguno, fuentes de limitación de derechos de otros no comprendidos en dicha legislación"**. Íd, nota al calce 3.

En este sentido, acudimos a la imposición de responsabilidad de nuestro Código Civil. Resaltamos que desde hace mucho tiempo, hemos reconocido en nuestra jurisprudencia el concepto de daño culposo o negligente como una fuente de obligaciones de gran alcance, concebido

de manera abarcadora. Éste no admite limitación ni excepción de clase alguna. <u>Santini Rivera v. Serv Air, Inc.</u>, *supra,* págs. 8-9; <u>Reyes v. Sucn. Sánchez Soto</u>, 98 D.P.R. 305, 310 (1970); <u>Hernández v. Fournier</u>, *supra*, págs. 96-97.

La norma jurisprudencial es tajante en cuanto a que no tan sólo se compensan los daños sufridos por una parte directamente sino aquellos daños morales sufridos por personas vinculadas por lazos de parentesco, afecto y cariño con el perjudicado. Tal perjuicio, constituye una acción independiente contra el causante cuya fuente de responsabilidad nace del perjuicio particular y personal sufrido. <u>Hernández v. Fournier</u>, *supra*, págs. 97-98. Ante ello, este Tribunal nunca antes había vacilado en reconocer el derecho de indemnización por los daños causados de forma directa a parientes.[55] De tal

---

[55] Véase, los casos de <u>Muriel v. Suazo</u>, 72 D.P.R. 370 (1951); insultos y discrimen racial; <u>Vda. de Valentín v. E.L.A.</u>, 84 D.P.R. 112 (1961); muerte ilegal; <u>Travieso v. Del Toro y Travieso, Int.</u>, 74 D.P.R. 1009 (1953); persecución maliciosa, <u>Berríos v. International General Electric</u>, 88 D.P.R. 109 (1963); explosión negligente de líneas eléctricas, <u>Concepción Guzmán v. A.F.F.</u>, 92 D.P.R. 488 (1965); <u>Cirino v. Fuentes Fluviales</u>, 91 D.P.R. 608 (1964); <u>Rodríguez Cancel v. A.E.E.</u>, 116 D.P.R. 443 (1985); accidentes laborales, <u>Vda. de Delgado v. Boston Ins. Co.</u>, 99 D.P.R. 714 (1971); rechazo equivocado de tarjeta de crédito, <u>Santiago v. Sears Roebuck</u>, 102 D.P.R. 515 (1974); accidentes automovilísticos, <u>Ferrer v. Lebrón García</u>, 103 D.P.R. 600 (1975); impericia médica, <u>Pérez Cruz v. Hosp. La Concepción</u>, 115 D.P.R. 721 (1984); profanación de tumba, <u>Maldonado v. Municipio de Ponce</u>, 39 D.P.R. 247 (1929); citados en <u>Santini Rivera v. Serv. Air, Inc.</u>, 137 D.P.R. 1, 10-11 (1994).

envergadura es esa norma jurídica que en <u>Santini Rivera v.</u> <u>Serv. Air, Inc.</u>, *supra*, no vacilamos en reconocer la reclamación de los parientes a base del Art. 1802, *supra*, con relación a una causa de acción laboral. Asimismo, expresamos que los daños sufridos por los parientes de un empleado a consecuencia de la actuación patronal discriminatoria caben dentro de la conducta culposa que el Art. 1802, *supra*, prohíbe. Así, resolvimos "que la esposa e hijos de una persona discriminada que sufren daños y angustias mentales, tanto en su quehacer diario en la sociedad como en su desenvolvimiento familiar, tienen una causa de acción separada y contingente". <u>Maldonado v.</u> <u>Banco Central Corp.</u>, 138 D.P.R. 268, 275-76 (1995). Esa contingencia es en la medida de que si no prevalece el empleado en su alegación de discrimen o causa de acción, no se puede reclamar por un discrimen no probado o sin base alguna. Claro está, le corresponderá al familiar probar la producción de un daño; un acto u omisión culposa o negligente, y la existencia causal. Una vez probados los elementos de la causa de acción al amparo del Art. 1802, se compensarán los daños sufridos del cónyuge o pariente. Véanse, <u>SLG Serrano-Báez v. Foot Locker</u>, 182 D.P.R. 824, 837-838 (2011); <u>Dorante v. Wrangler</u>, 145 D.P.R. 408 (1998).[56]

---

[56] De forma similar, se ha reconocido la causa de acción de los parientes del empleado al amparo del Art. 1802, *supra*, cuando el empleado había reclamado al amparo

V

No albergo duda alguna en cuanto a que la acción del cónyuge o familiar es una acción separada y no accesoria o derivada de la reclamación principal del empleado. Ciertamente, en su facultad legislativa, la Asamblea Legislativa puede regular y limitar las causas de acciones a las que se tenga derecho. Tal autoridad se refleja al aprobar las leyes especiales que rigen determinada materia. Ahora bien, en ausencia de tal manifestación legislativa, debemos aplicar el principio de la fuente supletoria gobernada, en este caso, por el Artículo 1802, *supra*.

En este sentido, al examinar las disposiciones del FMLA no surge que esta legislación haya ocupado el campo o que impida la reclamación al amparo del Art. 1802, *supra*. Mucho menos, existe legislación en Puerto Rico que impida la reclamación por angustias morales entabladas por la cónyuge de un obrero a quien se le violaron sus derechos al amparo del FMLA. Tampoco consta manifestación legislativa que limite la reclamación de un pariente al derecho que ostenta otra parte al amparo de una legislación que sólo aplica en el contexto laboral. Más aún, la propia FMLA reconoce que esa legislación no afecta cualquier provisión estatal que provea mayores beneficios.

---

de la antigua Ley de Represalias, Ley Núm. 96 de 26 de junio de 1956.

Véase, 29 U.S.C.A. sec. 2651. Por tanto, no concibo el razonamiento mayoritario de que una ley especial que reglamenta el contrato de empleo entre patrono y empleado puede, en ausencia de lenguaje a tales efectos, afectar los derechos de terceros bajo otras disposiciones legales de gran envergadura.

Es con este marco conceptual que debió examinarse la pregunta certificada y concluir que según la jurisprudencia discutida, el cónyuge del empleado tiene una causa de acción independiente por los daños emocionales al amparo del Art. 1802, *supra*. Tal reclamación es una personal, separada e independiente de si el empleado tiene o no un remedio similar bajo la ley por la cual reclama. La razón por la cual hemos reconocido esta causa de acción es porque la ley especial, por la cual reclama el empleado, es una legislación laboral dirigida específicamente para la protección del obrero y no de sus parientes. Siendo una causa de acción independiente, no dependerá de la naturaleza punitiva o no de la ley al amparo de la cual reclama el empleado. Los familiares pueden presentar una causa de acción independiente si logran establecer los requisitos del Art. 1802, *supra*. Nuestro ordenamiento civilista reconoce la facultad del cónyuge de reclamar por los daños sufridos a consecuencia del despido de su pareja.

El cónyuge de un empleado no está vedado por la FMLA a instar una causa de acción independiente por los daños emocionales al amparo del Art. 1802 del Código Civil de Puerto Rico. Tal derecho no está sujeto al resarcimiento que el FMLA contemple en beneficio del empleado beneficiado. Es decir, el remedio que el estatuto brinde al empleado no limita la causa de acción en daños al amparo del Art. 1802, *supra*, que puedan tener sus familiares por los mismos hechos. Ante esa realidad, restringir jurisprudencialmente el derecho de un cónyuge a reclamar el resarcimiento de los daños generados por la conducta del patrono de su cónyuge sería contrario a la tradición civilista de responsabilidad civil extracontractual y crearía una categoría especial de personas agraviadas que ni el legislador federal ni el estatal contempló. Siendo la actuación de la mayoría contraria a los postulados expuestos, estoy obligado a disentir.

LUIS F. ESTRELLA MARTÍNEZ
Juez Asociado